Affirmed and Opinion Filed February 27, 1998



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 95-01456-CR
No. 95-01457-CR

JAMES RHYMES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd District Court
Dallas County, Texas
Trial Court Cause Nos. F94-42944-S; F94-42945-S

# OPINION

Before Justices Lagarde, Whittington, and Roach
Opinion By Justice Lagarde

The jury convicted appellant James Rhymes of murder and aggravated assault and

assessed punishment at life confinement on the murder charge and ten years' confinement

on the aggravated assault charge. In a single point of error, appellant contends that the

evidence is factually insufficient to support each conviction. Because we conclude that the

evidence was factually sufficient to support each conviction, we overrule appellant's point

of error and affirm the trial court's judgments.

## Factual Background

Earl Douglas was married to Shandra Rodgers, but the two did not live together. Shandra told Earl that someone in her housing project did not want him coming to visit their daughter at Shandra's apartment. On the day of the shootings, Earl called Shandra's apartment and Isaac "Mike-Mike" Harris answered the phone. Earl asked Mike-Mike if he was the person who did not want Earl coming to Shandra's apartment. The two men had an argument and Earl told Mike-Mike to "come over if he had something to say."

Approximately two hours later, Mike-Mike and Michael Hall drove to Earl's house. Earl was sitting on the front porch with his nephew, L.V. Green, his niece, Senaquia Douglas, and her boyfriend, Travis Gilmore. Mike-Mike and Hall got out of the car, walked up to the porch, and lifted their shirts. Each had a handgun tucked into the waistband of his pants. Mike-Mike and Hall returned to the car and drove off but returned a few minutes later, on foot, along with appellant. As the three approached Earl's house, they called Earl a coward, trying to instigate a fight. Earl walked to the sidewalk in front of his home and said, "Well, we need to go on and get this over with . . . put down your heat." Mike-Mike gave his gun to appellant and appellant tucked it into the waistband of his pants. Earl described the gun he saw Mike-Mike hand appellant as chrome and an automatic.

Mike-Mike and Earl began to fight in the street. Appellant was standing behind Earl

-2-

during the fight. Hall joined in the fight and Earl was knocked to the ground. Mike-Mike and Hall started kicking Earl in the head. During the fight, Earl saw appellant holding a gun in his hands. While on the ground, Earl saw L.V. and Travis start walking toward him. Then, just before he lost consciousness, Earl heard four or five gunshots from behind and saw Travis and L.V. get shot, but did not see who fired the shots. Travis died at the scene, and L.V., who was shot in the leg, was hospitalized.

L.V. testified that during the fight between Earl and Mike-Mike, Earl fell to the ground. Hall then joined in the fight. L.V. moved to intervene on Earl's behalf. As he did so, L.V. saw Travis get shot. L.V. turned around to see who was shooting and saw appellant standing right behind him holding a gun and firing. L.V. testified that he could not see what kind of gun appellant was holding but that he saw the chrome and the fire from the barrel as it discharged. L.V. heard a total of four or five shots in rapid succession, one of which struck him in the knee.

Senaquia was on the porch when Mike-Mike and Hall initially drove up. When they drove off she went into the house. When they returned with appellant, she was still inside the house but observed the fistfight through the screen door. Senaquia saw appellant with a gun in his hand. She testified somewhat inconsistently that she could not recall if she saw him firing the weapon, but she nevertheless saw something red coming out of the barrel. She also saw appellant turn and run from the scene.

Shandra, Earl's estranged wife, testified that Mike-Mike and his girlfriend lived with

her in a housing project. Hall lived next door to Shandra. On the day of the shootings, Mike-Mike reported that Earl had called looking for a fight and that he was going to Earl's and beat him up. Shandra then went to a neighbor's apartment. From the neighbor's apartment, Shandra saw Mike-Mike and Hall return and enter her apartment with a third man. Shandra returned to her apartment and saw appellant sitting on the couch, holding a gun, and saying that he had started shooting because Travis and L.V. were about to intervene in the fight. According to Shandra, appellant said he just started shooting and "didn't care which way or who he shot." Shandra described the gun appellant was holding as a "silver chrome-plated gun." Shandra later identified a picture of a revolver as the type of weapon appellant was holding.

Robert Poole, a firearm and toolmark examiner for the Southwestern Institute of Forensic Sciences, testified that he examined two bullets recovered from Travis's body, two bullets recovered from the scene, and one bullet apparently recovered from Travis's leg. After microscopic examination and comparison, Poole determined that all five bullets were fired from the same weapon and the weapon was either a .38 or a .380 revolver. A .380 semi-automatic could not fire a .38 bullet. In Poole's opinion, a lay person could not tell the difference between a revolver and a semi-automatic by the sound of the firing of the weapon.

## Standard of Review

Appellant contends the evidence is factually insufficient to prove he shot Travis and

-4-

L.V.  In reviewing factual sufficiency, we do not view the evidence in the light most favorable to the prosecution.  *Clewis v. State*, 922 S.W.2d 126, 134-35 (Tex. Crim. App. 1996).  We set aside the verdict, however, only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  We remain deferential to avoid substituting our judgment for the factfinder's.  *Id.* at 133-36.  We will not reweigh the evidence and set aside the verdict merely because we believe a different result is more reasonable.  *Id.* at 135.  Thus, we review the factfinder's weighing of the evidence and can disagree with the factfinder's conclusion, but we exercise our jurisdiction only to prevent a manifestly unjust result.  *Id.* at 132-33.

**Discussion**

Appellant contends the evidence is factually insufficient to prove he was the shooter because the record shows he possessed a different type of gun than the one used to shoot Travis and L.V., that he was never actually seen firing the gun he possessed, and that another person could have been the shooter.  We disagree with each contention.

The testimony of the ballistics expert established that the same weapon, either a .38 or .380 revolver, was used to shoot both Travis and L.V.  Appellant notes that Earl described the weapon that Mike-Mike handed appellant as an automatic rather than revolver.  Although L.V. did not see Mike-Mike hand appellant his weapon, L.V. testified that Mike-Mike carried an automatic weapon.  The evidence does not establish that the weapon Mike-Mike gave to appellant was necessarily the weapon used in the shooting.

Appellant could have had his own weapon just as Mike-Mike and Hall did. L.V. testified that he could not see what type of gun appellant was shooting, but he did see the chrome handle and sparks coming from the barrel as it discharged. Furthermore, neither Earl nor L.V. is an expert in weaponry. Thus, even if they misidentified the weapon as an automatic, that fact alone would not lead us to conclude that the evidence was factually insufficient. Instead, it is just one piece of evidence for the factfinder to weigh.

We also disagree with the contention that appellant was not seen firing the weapon. L.V. testified that he saw Travis get shot, he turned around and saw appellant holding a gun and watched him fire a few more shots. Although Senaquia testified she was uncertain whether she actually saw appellant firing the gun, she maintained she did see him holding the gun in the air with something red coming from the end of the barrel, and she saw appellant running from the scene. Although Earl did not see appellant firing the weapon, he did see appellant in possession of a weapon. Further, Shandra testified that appellant, Mike-Mike, and Hall returned to her apartment after the shooting. Appellant was holding the revolver and admitted he began shooting when he saw L.V. and Travis move to intervene in the fight between Earl and Mike-Mike. Shandra's testimony is consistent with L.V. who testified that he was shot after he sought to intervene in the fight. In light of all the evidence, we conclude that there is factually sufficient evidence to support a rational factfinder's conclusion that appellant was the shooter.

Appellant's theory that someone else could have been the shooter is not supported

by the record. There is no evidence that someone other than appellant was discharging a weapon or that appellant *did not* discharge a weapon. The evidence was undisputed that appellant was at the scene, in possession of a weapon, and fled the scene following the shooting. Eyewitnesses identified appellant as the shooter and appellant admitted the shooting to a third person. Appellant's theory that someone else could have been the shooter, without evidence to support it, cannot sustain a factual sufficiency challenge.

## Conclusion

For the reasons set forth above, we conclude the verdict in each case is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, we overrule appellant's sole point of error and affirm the judgments of the trial court.

SUE LAGARDE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
951456F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-95-01456-CR

JAMES RHYMES, Appellant

v.

THE STATE OF TEXAS, Appellee

Appeal from the 282nd District Court of Dallas County, Texas. (Tr.Ct.No. F94-42944-S).

Opinion delivered by Justice Lagarde, Justices Whittington and Roach also participating.

### JUDGMENT

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 27, 1998.

SUE LAGARDE
JUSTICE